## ALASKA MINES CORPORATION v. GREENBERG.

(Circuit Court of Appeals, Ninth Circuit. May 3, 1920.)

No. 3378.

1. Mortgages ⬅️432—Mortgagee, assigning fractional interest, entitled to sue as trustee of express trust, without joining assignee.

An agreement between the holder of a purchase-money mortgage and M., who had a lien on the property, whereby the mortgagee assigned a fractional interest to M., and agreed to receive any sums paid as trustee, and pay over one-half to M., until the amount due him should be fully paid, when M. agreed to reconvey and release such interest, and further providing that, if the mortgagor should not pay the amounts due, the mortgage should be foreclosed and certain steps taken to secure the payment of M., *held* not an absolute assignment, but to make the mortgagee a trustee of an express trust, and as such entitled to sue in his own name for foreclosure of the mortgage, without joining M., under Comp. Laws Alaska 1913, §§ 857, 859, 1194.

---

⬅️For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**2. Mortgages ⊂⇒300—Tender, conditional on release by person for whom mortgagee was trustee, insufficient.**

Where an assignment by a mortgagee of a fractional interest in the mortgage was not absolute, but made the assignee trustee for the mortgagee, a tender by the mortgagor, on condition that a release be executed by both the mortgagee and such assignee, was not a valid tender.

Appeal from the District Court of the United States for the Second Division of the Territory of Alaska; William A. Holzheimer, Judge.

Suit by Herbert Greenberg against the Alaska Mines Corporation. From a judgment for plaintiff, defendant appeals. Affirmed.

The facts of this case are undisputed. On and prior to April 17, 1917, the appellee, Greenberg, was the owner of a number of placer mining claims in the Cape Nome mining district of Alaska, and certain personal property connected therewith, on which one George K. McLeod had a lien, executed October 9, 1914, for $13,350.81, payable from the first proceeds of the sale or working of any of the said claims. On the day mentioned he had, in the city of New York, two business transactions with the appellant, Alaska Mines Corporation, under one of which he gave to the latter an option on certain other mining property situated in the same mining district, and by the other of which he sold to it the mining claims and personal property referred to and described in the mortgage for the foreclosure of which the present suit was brought, and which mortgage was executed by the appellant to the appellee at the same time of the making of the above-mentioned sale—the consideration for the latter being $50,000, $10,000 of which was paid in cash, and the remaining $40,000 being evidenced by three promissory notes of the appellant, Alaska Mines Corporation, for $5,000, $10,000, and $25,000, respectively, secured by the said mortgage on the property so sold to the mortgagor by the said appellee Greenberg. At the same time, and in furtherance of the transactions between the appellant and the appellee, the latter paid to McLeod, enough cash to reduce to $11,000 the aforesaid indebtedness of Greenberg to McLeod, whereupon, and at the same time, those two parties entered into a contract by which the former lien of McLeod of October 9, 1914, was canceled and superseded by that defined by the new agreement, which, after reciting that it should be "evidence of such cancellation," declared, among other things:

"The Alaska Mines Corporation has this day made and executed to Herbert Greenberg its certain bond and mortgage in the sum of forty thousand ($40,-000) dollars, which said mortgage is a lien upon the following described real and personal property situated in the above-mentioned district" (describing the mining claims and personalty), and, after reciting the fact of the giving of an option on other property covered by the lien of October 9, 1914, proceeded:

"Herbert Greenberg hereby assigns to George K. McLeod an undivided eleven-fortieths ($11/40$) interest in the aforesaid bond and mortgage of the Alaska Mines Corporation. Said Greenberg hereby agrees to receive any sums paid on account of the notes of said corporation, and said mortgages, as trustee, and to pay over to said McLeod one-half thereof until the sum of eleven thousand ($11,000) dollars is paid thereout to said McLeod, and if the said Greenberg received interest, he is also to pay to said McLeod interest on said eleven thousand ($11,000) dollars, or any balance remaining due at any time.

"The parties agree that, when said McLeod shall have received said eleven thousand ($11,000) dollars, with interest, if any, he will reconvey and release to said Greenberg said eleven-fortieths ($11/40$) of said bond and mortgage just conveyed to him, and revest in said Greenberg all interest in said mortgage conveyed to him. If the said Alaska Mines Corporation shall not pay the amounts due on its bond and mortgage, the following provision shall apply:

"The property shall be foreclosed, and, if sold to an outsider, the proceeds

shall be first applied to the payment of any balance remaining due on the eleven thousand ($11,000) dollars payable to said McLeod, with interest, if any. If the property shall be bought in either by said Greenberg or any one in his interest, then the present lien given by the aforesaid agreement of October 9, 1914, shall be revived in favor of said McLeod to the extent of any unpaid balance then due him, and the said Greenberg will execute in proper form for recording a proper instrument reviving the aforesaid lien as a first lien as it is at this time, or if he shall fail to do so, or cannot do so, then he personally hereby agrees to pay to the said McLeod any balance then due and unpaid on account of said eleven thousand ($11,000) dollars.

"If the Alaska Mines Corporation shall exercise the option hereinbefore referred to, and any sum shall then remain payable to said McLeod on account of said eleven thousand ($11,000) dollars, said Greenberg agrees to hold any payment received by him under said option as trustee to pay thereout one-half thereof to the said McLeod until the whole of said balance due on said eleven thousand ($11,000) dollars is paid. And if said option is not exercised, and if through any mortgage foreclosure there shall not have been realized sufficient to pay the said McLeod the balance of any amount due him on account of said eleven thousand ($11,000) dollars, then and in that event the said McLeod is hereby given a first lien upon any and all properties mentioned in said option for any balance due of said eleven thousand ($11,000) dollars and interest, if any, in the same manner and form as said lien is stated in said agreement of October 9, 1914, and said Greenberg agrees to execute an instrument proper in form to be recorded, creating and reviving said lien, and in default thereof, at the option of said McLeod, said Greenberg agrees to pay to said McLeod any balance then due and owing to him on account of said eleven thousand ($11,000) dollars and interest, if any."

January 11, 1918, McLeod served on appellant at its New York office this notice: "January 11, 1918. Alaska Mines Corporation, 71 Broadway, New York City—Gentlemen: You will please take notice that heretofore and by a written instrument, the original of which I am showing you at the time of the delivery of this letter, Herbert Greenberg assigned to me eleven-fortieths of the notes and bonds and mortgages made by you and dated on or about April 17, 1917, for $40,000, which said mortgage is a lien upon the following property, including any and all improvements thereon, to wit: 'Holyoke No. 2 claim on Holyoke creek, a tributary of Bourbon creek, a tributary of Dry creek, a tributary of Snake river, said mortgage covering also the hull, of a dredge on said claim—all of which claim is in the Cape Nome mining and recording district, district of Alaska, Second division.' The above assignment covers eleven-fortieths share of the note of $25,000, due January 15, 1918. You are hereby requested to pay to me, as the same may become due, the above percentage, to wit, eleven-fortieths, of any and all bonds or notes and interest thereon secured by said mortgage aforesaid. Yours very truly, [Signed] George K. McLeod."

At the time of the service of that notice, McLeod exhibited to the appellant the agreement with the appellee of April 17, 1917, and while there was at that time a dispute between McLeod and Greenberg as to the exact amount remaining due from the latter to the former, it was conceded by Greenberg that there then remained due McLeod $2,850. The $5,000 and $10,000 notes secured by the mortgage were paid, and on the day the last note, that for $25,000, became due, the appellant tendered to the Empire Trust Company, then holding it for collection, its check for the full amount due thereon, conditioned upon a demand for a written release of the mortgage, to be executed by Greenberg and McLeod, and refused to deliver the check or to pay the note under any other conditions. Greenberg, while willing to comply with the demand in so far as it concerned himself, refused to procure the signature of McLeod.

On the day the $25,000 note became due, McLeod commenced an action in a court of the state of New York against Greenberg, alleging that the latter had collected $9,315 on the $10,000 note, but had failed and refused to pay to McLeod one-half thereof under the agreement of April 17, 1917, in which action a writ of attachment was issued and duly served on the present appellant,

which action at law was pending at the time of the commencement of the present suit of foreclosure. In its answer to the bill of foreclosure the appellant set up the notice served on it by McLeod, the commencement of the attachment action, and its pendency, and also, prior to the trial of the present suit, moved the court below for an order requiring the bringing in of McLeod as a party plaintiff or defendant thereto, on the ground that he was a necessary party— all of which the court refused, holding that under the agreement of April 17, 1917, Greenberg became the trustee of an express trust, and as such entitled to sue in his own name, and that McLeod was not a necessary party; and that is the real question in the case.

W. H. Bogle, F. T. Merritt, and Lawrence Bogle, all of Seattle, Wash., and O. D. Cochran, of Nome, Alaska, for appellant.

William A. Gilmore, of Seattle, Wash., and Hugh O'Neill, of Nome, Alaska, for appellee.

Before GILBERT, ROSS, and HUNT, Circuit Judges.

ROSS, Circuit Judge (after stating the facts as above). [1, 2] The solution of the question depends upon the proper construction of the agreement between Greenberg and McLeod of April 17, 1917, which agreement the record shows was the basis of the action brought by the latter in the state court of New York, in which the writ of garnishment was issued and served on the Alaska Mines Corporation; McLeod at the same time submitting to that company the said agreement, so that all of the parties mentioned in the statement of the case were fully aware of the provisions of the latter. Now, read and considered together, as they must be, what is their true meaning?

It is to be remembered that at the time of the execution of that agreement the indebtedness of Greenberg to McLeod had been reduced from $13,350.81 (secured by the lien of October 9, 1914) to $11,000. That lien was canceled and superseded by that declared and defined in and by the agreement of April 17, 1917. By it Greenberg, it is true, in terms assigned to McLeod an undivided eleven-fortieths interest in the notes aggregating $40,000 and in the mortgage securing them, executed by the Alaska Mines Corporation to Greenberg. Absolutely? We think not, for the reasons that the agreement declares that Greenberg should receive any sums paid on account of the notes and mortgage as trustee, one-half of which he should pay over to McLeod until the $11,000 due him should be fully paid, together with interest on the latter sum, or on any balance thereof remaining due, in the event that Greenberg should himself have received interest, and with the further agreement between those parties that, when McLeod should have received the $11,000, with interest, if any, he would—

"reconvey and release to said Greenberg said eleven-fortieths ($11/40) of said bond and mortgage just conveyed to him, and revest in said Greenberg all interest in said mortgage conveyed to him."

The clause last quoted, taken alone, undoubtedly would strongly tend to support the contention of the appellant that the assignment first spoken of in the agreement was absolute; but, as has been already observed, all of the provisions of the contract are to be read and considered together, in order to determine the true intent of the par-

ties. The agreement proceeds to declare in effect that, if the Alaska Mines Corporation should not pay the amounts due on the notes and mortgage:

(1) The mortgage should be foreclosed, and, in the event the property should be sold to an outsider, the proceeds of the sale should be first applied to the payment of any balance of the $11,000 remaining due McLeod, with interest, if any.

(2) Should the property mortgaged be bought at its sale, either by Greenberg or some one in his interest, the lien existing thereon October 9, 1914, should be revived in favor of McLeod to the extent of any unpaid balance due him from Greenberg, by an instrument in writing properly executed by him, in default of which he should personally pay to McLeod any such balance.

(3) Should the Alaska Mines Corporation exercise the option referred to in the agreement of April 17, 1917, and at the time of the exercise of such option there should remain due McLeod from Greenberg any part of the $11,000, the latter should hold any money received by him under such option as trustee—

"to pay thereout one-half thereof to the said McLeod until the whole of said balance due on said eleven thousand ($11,000) dollars is paid. And if said option is not exercised, and if through any mortgage foreclosure there shall not have been realized sufficient to pay the said McLeod the balance of any amount due him on account of said eleven thousand ($11,000) dollars, then and in that event the said McLeod is hereby given a first lien upon any and all properties mentioned in said option for any balance due of said eleven thousand ($11,000) dollars and interest, if any, in the same manner and form as said lien is stated in said agreement of October 9, 1914, and said Greenberg agrees to execute an instrument proper in form to be recorded, creating and reviving said lien, and in default thereof, at the option of said McLeod, said Greenberg agrees to pay to said McLeod any balance then due and owing to him on account of said eleven thousand ($11,000) dollars and interest, if any."

The obvious purpose of the agreement of April 17, 1917, as we construe it, was to secure to McLeod payment of the $11,000 then due to him from Greenberg, and to maintain, as security for such payment, the lien stated and defined in that agreement, or, in the event of the contingencies therein specified, the substitute lien therein provided for; Greenberg being expressly created trustee to receive the moneys as they should become due on the respective notes of the Alaska Mines Corporation, secured by the mortgage, and as such trustee to foreclose the mortgage in the event of default in their payment. It is undisputed that, when the $5,000 note was paid, it was paid to Greenberg, who paid one-half of the amount over to McLeod, as provided in the contract, thereby reducing Greenberg's indebtedness to McLeod to $8,500. The record shows that after the $10,000 note was similarly paid, and prior to the maturity of the $25,000 note on January 15, 1918, a dispute had arisen between the two as to the amount actually due from Greenberg, by reason of the claim of the latter that McLeod was indebted to him personally in the sum of $6,000; Greenberg admitting, however, that there was still due from him to McLeod, over and above that claim, the sum of $2,850.

It would seem from the record that that dispute was the real cause

for the bringing of the action in New York by McLeod against Greenberg, and the issuance and service upon the appellant herein of the writ of garnishment. The appellant was willing and ready to pay the balance remaining due on the note, provided McLeod joined in the release and satisfaction of the mortgage, and the appellee offered to deposit $10,000 called for by the note with the Empire Trust Company to protect the appellant against the claim and garnishment of McLeod. Nothing, however, came of those negotiations, and the present suit resulted. It may readily be conceded that McLeod had such an interest in the money and in the mortgage securing it, involved in the foreclosure suit, as would have entitled him to intervene therein, which, however, is quite a different matter from saying that he was a necessary party thereto.

The court below held the appellee to be the trustee of an express trust, and as such entitled to bring the suit in his own name, to which McLeod was not a necessary party, and as a consequence that the tender made by the appellant, conditioned as it was, was not a valid tender. Sections 857, 859, and 1194 of the Compiled Laws of Alaska are as follows:

Section 857: "Every action shall be prosecuted in the name of the real party in interest, except as otherwise provided in section 859; but this section shall not be deemed to authorize the assignment of a thing in action not arising out of contract."

Section 859: "An executor or administrator, a trustee of an express trust or a person expressly authorized by statute, may sue without joining with him the person for whose benefit the action is prosecuted. A person with whom, or in whose name a contract is made for the benefit of another, is a trustee of an express trust within the meaning of this section."

Section 1194: "Every action of an equitable nature shall be prosecuted in the name of the real party in interest, except as in this section otherwise provided. An executor or an administrator, a trustee of an express trust, or a person expressly authorized to sue by statute, may sue without joining with him the person for whose benefit the action is prosecuted. A trustee of an express trust within the meaning of this section shall be construed to include a person with whom and in whose name a contract is made for the benefit of another."

Those provisions of the statute of Alaska, and the decision of this court in the case of Northern Commercial Co. v. Lindblom, 162 Fed. 250, 253, 89 C. C. A. 230, in our opinion justified the action of the court below.

The judgment is affirmed.